Kelly, J.
(concurring in part and dissenting in part). We granted leave to appeal to consider whether a course of conduct, if proven, could constitute a waiver of the written modification and antiwaiver clauses contained in the parties’ contract. I concur with the majority’s holding that contractual terms may be waived, including written modification and antiwaiver clauses. I concur also with the majority’s holding that contractual waiver may be shown by a course of conduct that constitutes clear and convincing evidence.
*381 I write in dissent because I believe that a contracting party should be permitted to show waiver of written modification and antiwaiver clauses through a course of conduct constituting estoppel. The proofs would have to demonstrate that one party misled the other into the reasonable belief that he had waived certain conditions of their contract. In addition it would have to be shown that the other party reasonably relied on the misleading behavior. As applied to this case, I would find that a question of fact exists whether defendant led plaintiff to believe that it had waived the portions of the parties’ contract that (1) prevented plaintiff from recovering commissions for certain accounts, (2) required a written modification of contract changes, and (3) required any waiver to be in writing. A question of fact exists also concerning whether plaintiff relied on the alleged behavior. Accordingly, I would affirm the decision of the Court of Appeals that set aside the summary disposition for defendant.
I. DEMONSTRATING waiver
Both our case law and modem legal treatises recognize that parties may waive contract clauses by a course of conduct constituting estoppel. Both contemplate that a course of conduct may consist of silence plus knowledge by one party and detrimental reliance by the other over time.
Our Court first considered the proofs necessary to establish a contractual waiver in Klas v Pearce Hardware & Furniture Co, 202 Mich 334; 168 NW 425 (1918). We formulated the plaintiff’s burden by quoting the following among several sources as authority:
*382 “Waiver is a matter of fact to be shown by the evidence. It may be shown by express declarations, or by acts and declarations manifesting an intent and puipose not to claim the supposed advantage; or it may be shown by a course of acts and conduct, and in some cases will be implied therefrom. It may also be shown by so neglecting and failing to act as to induce a belief that there is an intention or purpose to waive. Proof of express words is not necessary, but the waiver may be shown by circumstances or by a course of acts and conduct which amounts to an estoppel.” 40 Cyc. p. 267. [Mas, supra at 339 (emphasis added).[1]]
Modem legal treatises reflect Mas’s view that silence with knowledge can form the basis of a contractual waiver by estoppel. American Jurisprudence 2d provides:
[C]ontract provisions may be waived expressly or the waiver may be implied from the acts of the parties. . . . [O]ften [waiver] is sought to be proved by various species of acts and conduct permitting different inferences and not directly, unmistakably, or unequivocally establishing it, in which case it is a question for the jury. An implied waiver exists when there is either an unexpressed intention to waive, which may be clearly inferred from the circumstances, or no such intention in fact to waive, but conduct which misleads one of the parties into a reasonable belief *383 that a provision of the contract has been waived. [17A Am Jur 2d, Manner of waiver, in general, § 656, p 663 (1991).]
Williston provides:
[S]ilence or inaction which is coupled with knowledge by the party charged with waiver that the contract’s terms have [not] been strictly met, and detrimental reliance by the other, for such a length of time as to manifest an intention to relinquish the known right, may result in a waiver of rights under the contract. [13 Williston, Contracts, Silence, Inaction or Forbearance, § 39.35, pp 653-654 (2000).]
This Court should retain the waiver burden set forth in Mas and in modem legal treatises. The inquiry into whether a written contract provision has been waived should be directed to the parties’ words and behavior that are alleged to demonstrate a revised agreement. Accordingly, I would allow a court to find waiver on the basis of knowing silence, in accordance with the standard set forth in American Jurisprudence 2d:
An implied waiver exists when there is either an unexpressed intention to waive, which may be clearly inferred from the circumstances, or no such intention in fact to waive, but conduct which misleads one of the parties into a reasonable belief that a provision of the contract has been waived. [17A Am Jur 2d, supra (emphasis added).]
II. THE MAJORITY’S “HEIGHTENED” EVIDENTIARY REQUIREMENT
The majority requires that the party charged with showing waiver of a written modification or anti-waiver clause meet a “heightened” standard of proof. Ante at 374. This is a new notion in the law, concocted out of whole cloth. Not only is it lacking in *384 supporting precedent, it unnecessarily injects confusion into established law.
What compels addition of this heightened standard of proof? Logically, if the parties had decided to amend their agreement, they intended to waive any provisions preventing them from doing so. There should be no need for an additional showing of waiver merely because the contract contains a written modification or antiwaiver clause. Moreover, the existing standard, clear and convincing evidence, already sets a high hurdle for the burdened party.
It appears that the purpose of the “heightened” standard is to enhance the gatekeeping function of the judge, diminishing the role of the jury. Its addition renders more difficult the burden of a party arguing waiver of a written modification or antiwaiver clause to survive summary disposition and reach a jury. The effect is to signal a distrust of any jury’s willingness or ability to apply the established standard faithfully.
III. THE DEMONSTRATION OF WAIVER IN THIS CASE
In this case, I would find that a question of fact exists about whether a waiver occurred.[2] Because we are reviewing a summary disposition ruling, we judge the evidence in the light most favorable to the non-moving party, plaintiff. Maiden v Rozwood, 461 Mich 109; 597 NW2d 817 (1999). Plaintiff alleges that it repeatedly reported to Rolf Bochsler, defendant’s vice-president and chief operating officer, that it was soliciting business for defendant from companies that *385 were excluded from its territory. Defendant knew of plaintiffs efforts, was in a position to benefit financially from them, and repeatedly said nothing to deter plaintiffs efforts. Moreover, defendant accepted without hesitation the money from the sales negotiated by plaintiff to businesses excluded from its territory.
While one instance of mere silence fails to evince the “course of acts and conduct” envisioned in Klas, this case involves more than a single instance of mere silence, defendant’s arguments notwithstanding. Plaintiff alleges that it repeatedly informed defendant that it was pursuing extracontractual accounts prohibited by the parties’ contract. Not only did defendant know of plaintiff’s activities, it knew that they would inure to its financial benefit. Defendant said nothing. Plaintiff relied on defendant’s repeated instances of silence and concluded the sales in question. Defendant took the proceeds, but refused to pay plaintiff its commissions. This course of conduct, if proven, could satisfy the standard described in 17A Am Jur 2d, causing the contract language that prevented plaintiff from recovering the sales commissions to be treated as waived. Accordingly, I would hold that defendant’s alleged behavior created a fact question regarding waiver.
IV. construction of the antiwaiver clause
I disagree also with the majority’s assumption that the antiwaiver clause applies in this case. Under the parties’ antiwaiver clause, defendant was entitled to “exact compliance” by plaintiff with the terms of the written agreement, even if it failed consistently to “insist upon strict compliance” by plaintiff.[3] Plaintiff *386 asserts that it could show that defendant failed to insist on strict compliance by plaintiff; it allowed plaintiff to solicit accounts not available to it under the contract. Defendant infers that, even if plaintiff’s allegation is true, defendant was entitled to “exact compliance” by plaintiff. The “compliance” would be, apparently, that plaintiff would refrain from claiming commissions from sales to these accounts. The majority appears to agree with defendant and interprets this reasoning as an obvious application of the contract language as written.
I quite disagree. The antiwaiver clause is not implicated under the facts of this case. Therefore, waiver of it never becomes an issue. The following hypothetical example illustrates how, I believe, the clause should be interpreted: Assume that the same contract exists as in the case before us. Plaintiff seeks to makes sales to company A, which is an excluded company under the parties’ agreement. Plaintiff notifies defendant of its activities and defendant is silent. Plaintiff relies on defendant’s silence and tries, but is unable, to make the sale. Then, plaintiff seeks to make sales to company B, another company excluded from plaintiff’s territory. This time defendant objects, reminding plaintiff that company B is an excluded account for which plaintiff is not entitled to commis *387 sions. Plaintiff makes the sale and claims the commission.
Defendant is entitled to refuse to pay, even though it received the proceeds of the sale. It was entitled to “strict compliance” by plaintiff regarding company B, even though it had failed to “insist upon strict compliance” by plaintiff regarding company A. Its prior “practice ... at variance with the [contract’s] terms . . . [did not] constitute a waiver of [defendant’s] right to demand exact compliance with the terms of [of the contract.]” See n 3.
However, if plaintiff had made the sale to company A, defendant could not have successfully relied on the antiwavier clause. When plaintiff attempted to sell to company A, defendant had no “prior practice” of waiving the no-saies-to-excluded-accounts contract provision. Moreover, when contracting, plaintiff surely did not agree that defendant could waive plaintiff’s compliance with one provision, then insist on plaintiff’s compliance with another if plaintiff, thereby, worked without commission. To read the language as the majority does would mean that the parties contracted that one could cheat the other, something to which they surely did not intend to agree.
Therefore, properly construed, the antiwaiver clause does not apply to the facts of this case and whether it was waived is irrelevant.
V. CONCLUSION
I would hold that written modification and antiwaiver clauses in a contract may be waived by a course of conduct. This includes conduct that misleads one party into the reasonable belief that a waiver has occurred and on which the misled party *388 relies, a form of estoppel. In this case, a waiver may have taken place. Plaintiff alleges that defendant exhibited repeated instances of silence when it was notified that plaintiff was pursuing sales opportunities forbidden by the contract and plaintiff relied on that conduct as a waiver. If proven, that could suffice to establish that defendant waived the parties’ antiwaiver and written modification contract provisions.
The majority disagrees with this dissent on how defendant’s course of conduct should be judged. The heart of our disagreement concerns the role of the jury in deciding contractual waiver cases. The effect of the majority decision is to authorize and encourage judges to decide close waiver questions, such as whether a defendant’s alleged repeated instances of knowing silence constitute waiver. I would allow a jury to malee this determination. I have faith that juries can understand and apply the waiver burden correctly, and I would give them a chance to do so in this case. Accordingly, I would affirm the decision of the Court of Appeals that set aside the summary disposition for defendant and remand the case to the trial court.
Cavanagh, J., concurred only in the result advocated in Justice Kelly’s dissent.

 The majority characterizes as obiter dictum the Mas Court’s inclusion of a course of conduct in the law of contractual waiver. Ante at 378-379.1 believe this an incorrect reading of the opinion. The plaintiff in Klas alleged waiver consisting of (1) certain oral representations by those working for the defendant, and (2) the defendant’s course of conduct. The Court held that waiver may be shown either expressly or impliedly, without articulating which formed the basis of its decision. Because we do not know on which basis the Mas Court made its decision, the statements or the course of conduct, we should not discard one holding in favor of the other. The Mas Court apparently chose not to rank one over the other, in the belief that, given the facts of the case, a jury might find either or both. Thus, Mas’s discussion of implied waiver is not dictum. At any rate, it is not essential for my analysis that Mas have precedential value. Rather, I cite it for the fact that this Court has recognized the validity of the test that I apply in this case.

 I dispute the majority’s derogatory characterization of plaintiff as a party that seeks to have the Court “not enforce the contract.” Ante at 377. Rather, plaintiff requests that the Court examine the contract and find that defendant waived certain portions of it.

. The antiwaiver clause states:
*386 No delay, omission or failure of [defendant] to exercise any right or power under this Agreement or to insist upon strict compliance by Representative of any obligation hereunder, and no custom or practice of the parties at variance with the terms and provisions hereof shall constitute a waiver of [defendant’s] rights to demand exact compliance with the terms hereof; nor shall the same affect or impair the rights of [defendant] with respect to any subsequent default of the Representative of the same or different nature.